[No. 7054.   Decided March 28, 1908.]

## In re THIRD, FOURTH AND FIFTH AVENUES, SEATTLE.[1]

MUNICIPAL CORPORATIONS—STREET IMPROVEMENTS—ASSESSMENT OF
BENEFITS—VALIDITY—AGREEMENT EXEMPTING PROPERTY.   An assess-
ment for a local improvement made under Bal. Code, § 775, which
requires that each lot shall bear its proportion of the expense ac-
cording to benefits received, and § 789, requiring the jury to offset
benefits against damages, is invalidated by an agreement made be-
tween the city and certain property owners whereby an agreed ver-
dict was to be returned allowing one dollar for land taken, one dol-
lar for damages to land not taken, and one dollar for damages by
reason of change of grade, where the agreement was carried out in
the assessment of benefits by the jury, which was advised that there
was no contest as to the lots of such owners.

SAME—EMINENT DOMAIN—COLLATERAL ATTACK.   Where property
has been condemned for a local improvement, and supplementary
proceedings are had for the assessment of the property benefited,
objections to the confirmation of the assessment roll, on the ground
that verdicts were rendered in the condemnation proceedings under
unlawful agreements with property owners whereby their property
was relieved from assessment, constitute a collateral attack upon the
condemnation proceedings, and cannot be entertained unless the
judgments therein were rendered without jurisdiction.

SAME—JURISDICTION—NECESSITY OF ORDINANCE—STATUTES — CON-
STRUCTION IN OTHER STATES.   Where statutes relating to local im-
provements are practically a reproduction of the laws of another
state, the decisions of such state holding that the court is without
jurisdiction of an assessment proceeding unless it is based upon a
valid ordinance will be followed by the supreme court of this state,
and a valid ordinance is necessary to jurisdiction.

SAME—JURISDICTION—OBJECTIONS TO AWARD—COLLATERAL ATTACK.
Where an ordinance authorized a local improvement and the con-
demnation of property therefor, pursuant to the requirements of the
law, and another ordinance authorized the city to enter into agree-
ments with owners of certain property in effect exempting the same
from assessment contrary to the requirements of the law, the two
ordinances must be considered together as one, and confer no juris-
diction to enter judgments in the condemnation proceedings; hence

[1]Reported in 94 Pac. 1075; 95 Pac. 862.

the judgments of condemnation are void and may be collaterally attacked by objections to the confirmation of supplementary assessment proceedings.

SAME—VALIDITY OF ASSESSMENT—CHANGE IN SCHEME—VARIANCE WITHOUT PREJUDICE. A change in the scheme for widening a street whereby the condemnation of a twelve-foot strip occupied by a valuable building is abandoned, is not a variance fatal to the proceeding, where the omission of the strip did not increase the amount of the awards or the assessments and was not detrimental to any particular property in the district or to the improvement as a whole, and no prejudice to the property rights of the objectors was shown.

SAME—TWO IMPROVEMENTS INCLUDED—ASSESSMENT. A single ordinance may provide for two improvements, one the widening of certain streets and the other a change of grade of certain streets, where both relate to a unified subject; and in such case each lot should bear its share of the resultant benefits from the improvement considered as an entirety.

SAME—DETERMINATION OF ASSESSMENT. In condemnation proceedings for widening streets under a plan to regrade the same, the commissioners in determining the assessments for benefits to lands not taken may assume that, after the condemnation award, the city will regrade the street and complete the improvement within a reasonable time.

SAME—PROPERTY LIABLE TO ASSESSMENT. The franchise and property of a street railway company in a street cannot be assessed for the improvement of the street by widening and regrading the same.

Appeal from a judgment of the superior court for King county, Frater, J., entered June 27, 1907, confirming an assessment roll made by commissioners appointed to assess property specially benefited by local improvements, after a hearing before the court without a jury. Reversed.

*Harold Preston, Peters & Powell,* and *Guie & Guie,* for appellants.

*F. E. Rawlings,* appellant, *pro se.*

*Hastings & Stedman,* for appellants Waring *et al.*

*Scott Calhoun,* for respondent.

HADLEY, C. J.—This is an appeal from the judgment of the superior court affirming an assessment roll for street im-

provements in Seattle.  The city council of Seattle passed an ordinance which provided for the widening, twelve feet on each side, of Third and Fourth avenues from Pike street to Denny way, and Fifth avenue from Westlake avenue to Denny way, and for changing the official grade of portions of said avenues and intersecting streets.  Said avenues and streets run through what is known as "Denny hill," and the change of the grade involves deep cuts through the hill.  The widening and regrading schemes proposed by said ordinance have become generally known as the "Denny hill regrade."  For the purpose of widening the streets and to ascertain the damages to adjacent property, a condemnation proceeding was instituted.  Verdicts of the jury were returned, aggregating $1,124,891.54.  Two forms of verdicts were used which may be called the "long" form and "short" form.  The long form segregated the elements of the award so as to show the amounts of damages for the land taken for widening purposes, for damages to the remainder of the lots by the taking, and for damages by change of grade.  The short form contained no segregation, but provided so much damages in the aggregate caused by the improvement as a whole.  The improvement as a whole consisted of two parts; first, the change of width of the three avenues, and second, the change of grade of the said avenues and of the streets intersecting them.  The improvement district extended from Pike street and Westlake avenue on the south to Denny way on the north, and from Second avenue on the west to the alley between Fifth and Sixth avenues on the east.  Parts of the territory in the district were affected by both elements of the improvement; that is to say, at some places the avenues were widened and the grade was also changed; other parts were affected by the widening only; still other parts by the change of grade only, and remaining parts were not affected by either element.  After the verdicts were returned and the city council had accepted the awards, the superior court appointed three commissioners to make an assessment of the property specially benefited.  The assess-

ment roll made by the commissioners included all the property in the improvement district, with a few omissions, except those lots to whose owners verdicts for damages to the remaining parts not taken had been given. The roll also included property surrounding the improvement district. A hearing was had upon the assessment roll and the court modified the assessments in some respects. This appeal is from the court's approval of the roll as modified. Among the many appellants are owners of property within the improvement district, and also owners of other property without the district.

The principal error assigned is that the court confirmed the assessment roll and refused to set it aside entirely. The argument of appellants is directed to several points as affecting the validity of the assessment roll. The city council passed an ordinance authorizing the city officers to enter into an agreement in writing with certain owners of property situated in the improvement district whereby the property owner should receive one dollar as compensation for his land taken in widening Third avenue, and should have a verdict for one dollar for damages to the remainder by the taking, and also a verdict of one dollar for damages to the remainder by the change of grade of the streets. Such an agreement was made with certain property owners, and thereafter, in each instance, the verdict returned by the condemnation jury corresponded with the written agreement. By reason of said verdicts the lots affected by them were not included in the assessment made by the commissioners. Some of the property affected by the agreement and verdicts is very valuable. The assessment proceeding is under the act of the legislature of 1893, Bal. Code, § 775 et seq. (P. C. § 5050), and each lot should bear its proportion of the expense according to the benefits received. Under that law the jury in the condemnation proceeding shall ascertain the amount of damages which must be paid as a part of the assessable cost of the improvement. Section 789 (P. C. § 5063) requires that the damages to be ascertained shall be such as are over and above any local and special bene-

fit arising from the improvement. In other words, the jury by its verdict must offset benefits against damages.

The possible effect of the verdicts returned in accordance with the aforesaid agreement is illustrated by appellants by reference to specific instances. For example, Bruce Waring, as the owner of lots 1 and 4, block 52, Denny's addition, was one who signed the agreement, and a verdict was returned in pursuance thereof, awarding him one dollar for the land taken, one dollar damage to the remainder for the taking, and one dollar to the remainder by the change of grade. Afterwards Waring for some reason moved the court to set aside the verdict, which was done, the court merely stating in its order that the verdict was entered by inadvertence. Afterwards Waring's case went to trial, and the jury returned a verdict for $15,000 for the land taken, and no damages to the remainder either by the taking or the change of grade. The commissioners afterwards assessed the remainder of Waring's lots $31,750. If the agreement as to Waring's property had been carried out as was done with other property, there could have been no assessment against his property, for the reason that the effect of the agreed verdict was to find that there were no benefits in excess of damages which could be assessed. By the last verdict, however, it was found that there were no damages to the remainder, and inasmuch as the damage for the part taken was $15,000 and the benefit to the remainder was $31,750, there was a net balance of $16,750 assessable against the property. It is manifest that other property was relieved of the burden of the assessment to the extent of the above sum which would otherwise have been imposed if the agreement had been carried out as affecting Waring's two lots. Other similar illustrations are given by appellants, and there were about thirty lots in all covered by the agreement and the verdicts thereunder exclusive of the Waring lots.

The respondent argues that inasmuch as those verdicts were returned in due form, making no reference upon their

face to any agreement, it cannot be said that the jury did not fully deliberate upon the subject of damages and benefits without regard to any agreement. The jury were, however, advised that there was really no contest as to those lots, and that their services with respect thereto were merely formal. We think it would be doing violence to fair dealing to hold under such circumstances that it must be presumed that the jury fully considered the matter of damages independently of the agreement. The record clearly shows that the agreement was authorized by the ordinance, was made by the city's officers, and was carried out by the verdicts. It is thus manifest that the other property holders were deprived of the benefit of a jury's determination with respect to the lots covered by the agreement. Their interest in that subject is vital since it bears a direct and material relation to the extent of their own burden in the premises. The matter is of such importance that it invalidates the assessment which was afterwards made, if appellants are entitled to raise the question now.

Respondent argues that appellants' attack is a collateral one, and that they should not now be heard for that reason. If the attack is a collateral one upon a judgment entered merely erroneously, then respondent's contention should prevail. The attack was made by way of objections to the confirmation of the assessment roll. It was therefore made in the supplementary proceeding for the assessment of the property following the condemnation proceeding. While the condemnation proceeding bears a very important relation to the supplementary one, and while both relate to the one subject of the proposed improvement, yet under the statute of Illinois, which is similar to ours, it is held that the two proceedings are so far distinct that ordinarily an attack in the later proceeding, raising questions litigated in the former one, is collateral and cannot be maintained. The Illinois supreme court, however, states the rule as follows, in *Bass v. People*, 203 Ill. 206, 67 N. E. 806:

"The supplemental proceeding is collateral to the one on which the judgment of condemnation was rendered, and the

questions involved in the original proceeding cannot be relitigated on the supplemental petition for a special assessment, but if the condemnation judgment is entered without jurisdiction, it may be collaterally attacked in the proceeding to confirm the special assessment."

Thus it will be seen that, if the condemnation judgment is entered without jurisdiction, it may be collaterally attacked in the supplementary proceeding. It is the position of the appellants that the condemnation judgment was entered without jurisdiction. Our statute being practically a reproduction of that of Illinois, we have heretofore followed the usual rule and have approved the decisions of that state in the matter of construing the statute with respect to such provisions as are similar to ours. *In re Westlake Avenue*, 40 Wash. 144, 82 Pac. 279. Invoking the same rule here, we find that it has been repeatedly held in Illinois that a valid ordinance of the city is essential to the validity of every special assessment for a local improvement, and that the court is without jurisdiction of an assessment proceeding based upon an invalid ordinance. *Walker v. People*, 202 Ill. 34, 66 N. E. 827; *Cass v. People ex rel. Kochersperger*, 166 Ill. 126, 46 N. E. 729; *Culver v. People ex rel. Kochersperger*, 161 Ill. 89, 43 N. E. 812; *Carlyle v. County of Clinton*, 140 Ill. 512, 30 N. E. 782.

Having reference to the above-stated rule, what do we find in the case at bar? We find an ordinance passed authorizing the improvement in ordinary terms, and also another authorizing an agreement with the owners of certain property affected as to damages, in practical effect amounting to an agreement to exempt the property from assessment for the improvement. Appellants say in their brief that the agreement ordinance was passed after the improvement ordinance. From our examination and understanding of the record, the agreement ordinance was first in point of time, and the resulting agreement actually antedated the passage of the improvement ordinance. We do not see, however, that it is material

which was first.    The two related to the same subject, and
were both intended to be operative.    They must, therefore, be
considered together as in effect one ordinance, since the terms
of both were carried into effect.    The condemnation proceed-
ing was conducted on the plan outlined by the two ordinances
considered together.    The agreement plan was respected by
the court, and the judgment of condemnation was based upon
that plan.    Under such circumstances the court had not juris-
diction to enter the condemnation judgment.    The proceeding
was based upon a plan not authorized by the law and in direct
violation of the statutory requirement that a jury shall de-
termine all the damages after considering also the benefits,
thus making it impossible for the city to agree with certain
property holders that their property is not benefited in excess
of damages, and that it is therefore exempt from assessment.
The improvement ordinance standing alone may have been
sufficient upon its face to confer jurisdiction, but when carried
into effect as modified by the terms of the agreement ordinance,
it became void in its operation, and the court had no jurisdic-
tion to enter the condemnation judgment based as it was upon
mere agreed verdicts as to certain property, to the probable
substantial prejudice of other property owners.    In any event,
other property holders had the right to presume that their
rights in the premises would be protected by the ascertainment
of damages as provided by law.    In *Chicago v. Shepard*, 8
Ill. App. 602, it was held that a city cannot acquire property
for the improvement by means of private contracts with the
owners, as such a practice would lead inevitably to favoritism
and corruption, and inasmuch as the statute has prescribed a
specific manner for acquiring the property, it follows by the
rules of construction that it impliedly forbids the thing being
done in any other way.    To the same effect see, also, *Ayer v.
Chicago*, 149 Ill. 262, 37 N. E. 57.    The condemnation judg-
ment having been so entered without lawful authority, it was
done without jurisdiction, and may therefore be attacked in
this supplementary proceeding.    The condemnation judg-

ment being void, the assessment based thereon is also void and should have been set aside.

For the foregoing reasons the judgment will have to be reversed but, in view of future proceedings, some other questions raised by appellants may be properly passed upon at this time. They complain that the improvement ordinance authorized the condemnation of twelve feet of two fractional lots for the purpose of widening Fourth avenue; that, after the condemnation proceeding was instituted, the city council passed a resolution abandoning the plan of widening the avenue on the east side thereof at that point, and directed the corporation counsel to dismiss the proceeding as to that property, which was done. Complaint is made that, instead of Fourth avenue being widened twenty-four feet as provided by the improvement ordinance, there will be a jog on the east side of it caused by private property protruding twelve feet. It is claimed that this is a material change, and that appellants are being assessed for a different improvement from that originally authorized. It was not shown, however, that any property in the district would be less benefited by reason of the omission, or that the omission of this strip from the taking would be detrimental to any particular property in the district. It was not shown that the improvement as a whole would be affected by the omission. It did appear that the strip omitted is very valuable and that it is covered by a substantial business building five or six stories high. It cannot be claimed that the omission of the necessary increase in the amount of awards and consequent assessments, which the value of that land and building would have required if it had been taken, was an injury to appellants. The property mentioned is triangular in form and is all covered by the business block. It does not abut upon any lots in the district, but it is completely surrounded by streets. The only purpose to be served by the necessary heavy expense of cutting off a part of this property would be to secure twelve feet more in the width of Fourth avenue at that point for sidewalk purposes. Under such circumstances we think the variance is not a fatal one.

Such a variance to be fatal must go to the extent of prejudicing the property rights of the objectors. *Lewis v. Seattle,* 28 Wash. 639, 69 Pac. 393.

Another point urged by appellants is that it was not lawful for the counsel to combine in one ordinance and as one improvement two improvements so different from each other as the widening feature and the change of grade feature of this ordinance. We think this contention is not well taken. The ordinance relates to a unified subject, the improvement of certain streets, and it is immaterial that such subject is capable of subdivision. Appellants argue that, in levying the assessment, no lot should be assessed for any part of the widening except such as is benefited by the widening, and then only the amount of its benefit from that source. We think each lot should bear its share of the expense to the extent of the resultant benefits received by it from the improvement considered as an entirety. The widening and also the change of grade are simply elements which enter into the reasoning by which the final result is reached when fixing the amount of benefits to each lot.

Appellants' next point is that the commissioners in making the assessments for benefits proceeded upon the assumption that the streets will be hereafter widened and graded down to the new grades, and that the abutting lots will also be graded down to the same level, thereby obliterating Denny hill. They argue that the calculation of benefits was based upon the mere probability of the future improvements being made. We think this objection is without force. Under the statutory scheme the assessments must be collected to pay the awards before the city has the right to enter into possession of the land condemned in order that it may make the necessary cuts or fills for changing the grades. As a duty following the imposition of the assessments, the city assumes the burden of causing the improvement to be made, and the property holder is entitled to have his damages and benefits estimated on the assumption that the improvement will be made, and he is also entitled to have it made within a reasonable time.

It is next urged that the assessment is void for the reason that it appears that a street railway runs through parts of the streets to be improved, and that the property thereof was omitted from the assessment. Of the decisions of this court the case of *Northern Pac. R. Co. v. Seattle*, 46 Wash. 674, 91 Pac. 244, is cited upon this point. That case involved the assessment of a right of way owned and controlled by an ordinary steam railroad. Since the briefs in this case were written this court has decided the case of *Seattle v. Seattle Elec. Co.*, 48 Wash. 599, 94 Pac. 194. It was there held that a street railway is not assessable for a street improvement, and the distinction between an ordinary railroad right of way owned by the company and the mere privilege of the street railway company to occupy a street along with other travelers, is clearly shown. Street railway companies are sometimes required, as a condition for enjoying the franchise to occupy the streets, to contribute to the expense of street improvements. In that manner they sustain a contractual relation to the city, but that is altogether different from an attempt to levy and enforce an assessment *in rem* against a thing so intangible as the mere right to operate cars upon a street owned by the public. On the authority of the case last cited it is held here that the railway property was properly omitted from the assessment.

For the reasons first assigned, however, the assessment will have to be set aside because of the void judgment in the condemnation proceeding. The judgment is therefore reversed, and the cause remanded with instructions to vacate the order of confirmation and to set aside the assessment roll.

FULLERTON, MOUNT, CROW, RUDKIN, and DUNBAR, JJ., concur.

ON PETITION FOR REHEARING.

[Decided May 23, 1908.]

PER CURIAM.—The respondent, the city of Seattle, petitioned for a modification of the opinion of this court heretofore filed herein. The petition was treated as in the nature of

one for rehearing, and appellants were directed to answer it. After answers were filed, the court duly considered the matter as presented by both the petition and answers, and arrived at the conclusion that the requested modification should be granted.    The chief reasons urged against it in the answers relate to the alleged inexpediency of entering the condemnation judgment upon any of the verdicts which were returned, for the reason that they were based upon values estimated at a time when property valuations were very high.    Such a consideration might be urged on any appeal as a ground for vacating a judgment and retrying the whole case in the light of later developments; but it manifestly could not be so treated by the court.    The objection made to the original opinion is that language employed therein has the effect to declare the entire condemnation judgment void.    The following words appear in the opinion, to wit: "The condemnation judgment being void, the assessment based thereon is also void and should have been set aside."    The petition asks the above to be modified so as to read as follows: "That portion of the condemnation judgment entered by reason of the so-called 'Moore agreement and ordinance,' being void, the assessment based thereon is also void and should have been set aside." The petition also asks that the closing paragraph of the opinion be modified by inserting after the word "void" in the first sentence, the words, "part of the," making the whole sentence read as follows: "For the reasons first assigned, however, the assessment will have to be set aside because of the void part of the judgment in the condemnation proceeding."    It is therefore ordered that the modification of the original opinion shall be and is hereby made as above indicated.